All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Please be seated. Our first case for argument today is 22-1526, Kanyu v. Samsung. Mr. Goldberg, please proceed. Good morning, Your Honors, and may it please the Court, thank you for indulging me with my cap. I appreciate that. Patent owners, like my client Kanyu, have constitutionally protected patent rights that are entitled to due process protection. There were systemic problems here and decisions that were peculiar to this case that denied my client those protections. One of the issues here is that the Board invalidated some of the claims of Kanyu's patents based on the Perlman reference that had already been considered in the original prosecution and the original examiner had concluded that Perlman did not anticipate those claims. The Board, the Patent Office, was bound by that decision under issued preclusion principles and should not have revisited. Are you saying the Board is bound by the examiner? From the original prosecution. That's not the law. That's never been the law. We get cases all the time where an examiner has issued a patent and in an IBR the Board looks at the same references and comes to a different conclusion. The Board, there's no principle of issued preclusion that binds the PTAB to an examiner. Do you have a case for that? Well, we cited Amarola v. Napolitano, 710 F3rd 568. Well, I'm going to guess that that's not a patent case given who Napolitano was. That's correct. The ruling in that case was that a federal agency is barred from entering a ruling inconsistent with the agency's prior ruling where no change in law was shown. Well, that might be the case if you had a prior PTAB ruling and a subsequent PTAB changed it without explanation. But that's not the same level here. Well, we're raising this, Your Honor, as a due process issue because there were many issues here where the process was really tilted against Canoe. So, for example, the petitioner, Samsung, in their petition said Pearlman had not been considered in the original prosecution. That was false. They later relented on that and agreed it had been considered. Well, I don't understand how that's due process violation. I mean, you corrected it. They were wrong. The board knew they were wrong. There's a problem, we think, Your Honor, if a patent owner is essentially subject to double jeopardy and the process of having the same issues litigated, essentially argued in one proceeding, in one process, and then having to relitigate that. But that's the AIA in the whole system of the PTAB. I did not read your brief as making a constitutional facial challenge to the AIA. And if it did, it would be meritless because we've had a number of these constitutional challenges and we've rejected them all. And the Supreme Court has found the AIA inconstitutional. Well, one of the issues here, Your Honor, specifically with respect to the AIA, is that it's supposed to be a standard of at least a new question. So the standard had been there had to be a new question of patentability. And the standard was elevated in connection with the AIA. It wasn't reduced. So if there's not a new issue being presented... In order for the board to institute, it has to determine whether there's a new question of patentability. Right. These... We know that that decision also is unreviewable by us, as held by us and affirmed by the Supreme Court. I understand that, Your Honor. And we're not challenging the institution decision. We're saying that this process denied Canoe due process because of many different reasons. This is one of those reasons. So we're not hanging our head on that. This is one of the issues, but we think that that sort of sets the table, sets the tone. It's supposed to be a new issue that's decided. Canoe was put, you know, had to run the gauntlet here on something that had already been decided once. Let's get to the meat of the case and the claim limitations. Your argument is that the claim should be limited to displaying only four of the recited positions. But yet that argument seems to be belied by the specification in which different arrangements and embodiments are presented. Yes, Your Honor. With respect to the other embodiments in the specification, that's not what's claimed by Claim 1 of either of the two patents, 393 or 354 patents. Those patents in Claim 1... Your argument is that the claims are limited to displaying only, right? So, by your own words, the specification is contrary to that argument. Well, the specification is entirely consistent and supportive of our argument with respect to the embodiment that was claimed in Claim 1 that relates to the joystick that has an up, down, left, right configuration. And, in addition, there are limitations in those claims that specifically are limited to four positions. So, there's the initial placement of item identifiers... So, in addressing your question to see if the claim is limited in the fashion that you argued, we look at the specification, and there is where we find other arrangements, other manners of display. So, there's not just four. Right, and we've cited case law explaining that the patent owner, during prosecution, can have claims that are limited to particular embodiments and that that's a normal manner of claiming the invention. Different claims can refer to different embodiments. We think it's clear that Claim 1 of each of the patents is referring to the embodiment for essentially a joystick-type situation where you're talking about using up, down, left, right. Your argument is that it's referring only to that embodiment. Well, that's essentially correct, Your Honor, but there's also the limitation about where do you place the highest ranked of the item identifiers. So, even if you're not limited to only four positions, specifically the highest ranked of the item identifiers must be in one of four positions. That is in one of the limitations in the 354 patent. There's also the issue about claim differentiation. Did you say that in your brief? I don't recall seeing this argument of hierarchy. I think, no, yes, we did argue that, Your Honor. Yes. There's also the issue of claim differentiation because some of the limitations talk about positioning in up, down, left, right, and others talk about at least in up, down, left, right. So, where at least is used, that needs to be given meaning. So, if it's at least up, down, left, right, that has to mean something more than just saying up, down, left, right. So, our position is that limitations that don't say at least are limited to those four positions. Your Honor, with your indulgence, I would like to go back to the due process. I think I started off on perhaps maybe the weakest of the issues there, but we do think that there are important due process concerns. So, we think, for example, the Board should have drawn an adverse inference on a nexus issue because we have shown that Samsung had access to Canoes technology. Samsung, they praised it. The Board said that, quote, we agree with patent owner that petitioner could have been worthwhile coming and producing internal documents that are certainly relevant to patent owner's secondary considerations, contentions. This is a discovery issue, right? So, it could be framed that way, yeah. So, then why is it a due process issue? I mean, do you think that the Board improperly denied the discovery or failed to draw an adverse inference because of Samsung's discovery failures to the extent there were failures? That's a discovery issue, not a due process issue. Your Honor, I would argue respectfully that the patent owner is entitled to notice and an opportunity to meet the grounds of rejection. So, here, the patent owner was not given the opportunity to meet the grounds of rejection. Samsung had a duty of candor. You knew of the combinations or the prior art that they were using to validate your patent, right? Yes. And so, you could respond to those and you were allowed to make all available arguments. You're absolutely right, Your Honor. We could respond as a legal matter, but as a factual matter in terms of the evidence. So, Samsung had a duty of candor to the Patent Office. When they submitted their petition, they were required to submit the evidence they had bearing on secondary considerations. They said falsely that there was none. We then eventually were able to ferret out their internal documents that they produced in Korean. We had them translated. This is all at the last minute. And so, we had some of the documents regarding their evaluation of Canoes technology. Then the next question is, did they, as we believe and as we think the evidence is pretty clear, did they then take the technology and incorporate it into their products? And that includes back-end type things that only they have the information for. Counsel, you've made a lot of arguments and you've decided to focus on this one in an oral argument and I'm sort of questioning your choice. Am I right in understanding that this is a case about anticipation, that that is what is at issue in front of us? It's whether the Board's finding that Claim 1 of the 393 and Claim 1 of the 354 are anticipated? There are also issues of obviousness with respect to Dependent Claim 5, for example, is also before the court. And Dependent Claim 5 in each of the patents refers to what's going on under the hood, using hierarchical trees. And this is the evidence that we specifically sought and that Samsung specifically withheld from us. The Board should have drawn, versus our position is they were required to draw, adverse inference that that evidence would have shown Samsung incorporated Canoes technology into their products and therefore there was a nexus. The Board drew no adverse inference. The Board held it against Canoe that there was not evidence of nexus. The very evidence that Samsung intentionally withheld from Canoe. The Board also shut down Canoe's ability... To us, that's an evidentiary issue which we would view for abuse of discretion. Your Honor, we're saying this, we're raising this in the context of due process as to whether this entire process was fair. It's an evidence issue. We're trying to frame it as a due process issue to make it into a legal issue, but it just isn't. So, I mean, if you want to raise it, raise it the right way. Tell me why it was an abuse of discretion for the Board not to order them to give over more discovery. In the context of making the argument, we have shown why it was an abuse of discretion, Your Honor. So, certainly, we have raised the evidentiary issue. We think it's part of a bigger problem here and that each of these pieces, the whole is greater than the sum of the parts. There also is an order from the Board shutting down prematurely Canoe's ability to seek authorization for additional discovery. So, when the Board granted Canoe some discovery, it said that it will not authorize any follow-on discovery. So, that enabled Samsung to shut down Canoe's efforts to obtain the information that was needed. The Board also entered a protective order... Mr. Goldberg, you're using your rebuttal time. Would you like to say anything? Yes, I would like to say that... I will mention that there were systemic issues that we've raised about not having the true three-judge panel, which was required by Section 6 of the Patent Act, because, in effect, the Board... these decisions are decided by a single judge and they're always rubber-stamped by the other two. That cannot happen. There's supposed to be three judges to provide due process to the patent owners. So, I'll save the rest of my time for rebuttal. Thank you. Thank you, Your Honor. May it please the Court, David Cooper on behalf of Samsung. The Board correctly held that all of the claims at issue are anticipated or obvious, and the final written decision should be affirmed. Canoe says little in its reply brief about the substance of the Board decisions, and that's because the Board decisions are the product of careful and largely uncontested reasoning about the invalidity of the claims at issue. The only merits argument that Canoe makes in its briefs and here today is that the claims should be limited to a four-directional embodiment, and there is nothing in the claim language creating such a limitation, and the specification explicitly refutes it. They point to this idea that the embodiment, Claim 1, is limited to a joystick. It is not. Claim 1 is limited to an input directional controller, which is not limited to a joystick, and, in fact, the specification describes other kinds of controllers, including touchscreens, and specifically includes a three-by-two grid, which includes more than the four options that Canoe suggests the claim is limited to. They also point to the highest-ranked language in the 354 patent. That suffers the same defect, which is if we look at the claim language, Claim 1 of the 354 patent, it says that the highest-ranked can be listed in the left, right, or up or down positions. It does not say that is the only positions in which they can be shown or displayed, and there's no basis as a matter of law for implying a limitation that does not exist within the claim language, and that is especially clear here when the specification explicitly talks about other places where the highest-ranked indicators can be located. Canoe, therefore, focuses on the procedural arguments, and if the Court doesn't have any questions about the claim language, I'd be happy to speak about the procedural issues. They frame the procedural issues in terms of due process because, as Judge Hughes notes, otherwise they'd be subject to abuse of discretion review, and there is no abuse of discretion here. Due process requires notice... Was there a hearing in this case? There was a hearing, yes. How many judges participated in the hearing? Three. Okay. Yes. And so they had notice and opportunity to be heard. There's no reasonable dispute that they had such notice, they had such opportunity, and they were, in fact, heard. What they claim is that they wanted essentially two things. One, they wanted more discovery, but I think it's important to look at what the timeline here was. First, there was extensive meeting confirms with Samsung, where they, in fact, received substantial discovery before filing their patent owner response. Then after filing that response, they filed a motion before the board asking for additional discovery. That motion was, in substantial part, granted. They received an interrogatory response and a 30B6 deposition, which specifically discussed the issues that they wanted the deponent to discuss. Their complaint now sort of takes two forms. One, they claim that they wanted additional discovery after that, and the board did not allow that additional discovery. But the crucial point here is not only did they not ask for that additional discovery, but they don't even tell this court what that additional discovery would concern. The reality is that all of this discovery dispute is a sideshow, because it has nothing to do with the actual basis for a decision here. First, the independent claims were invalidated on anticipation grounds, and as Chief Judge Moore's question suggested, anticipation is not impacted by secondary considerations. And so this entire question about the evidence is irrelevant to anticipation. They say that it is relevant to the dependent claims, some of which were invalidated on obviousness grounds. But it's important to note that you can search the blue brief in vain for a discussion of why the dependent claims are in fact valid, because there is no argument in the blue brief about why any dependent claims are valid, any discussion about the claim language of any of the dependent claims. So any discussion of any argument about the validity of the- Can you suggest then that the dependent claims are the driver for the secondary considerations they allege? No. And in fact, what the board said was there was no nexus between any secondary considerations and the claims at issue. And in fact, the board noted that Canoe's own expert did not even attempt to show that there was a nexus between the claims and Samsung products being accused or Canoe's own products. And so what we're left with is, and I think this is an important point, because Canoe's counsel said here that they wish they'd had an adverse inference on nexus. But that conflates two very distinct issues. What they actually asked for an adverse inference for was this adverse inference of copying. And obviously, Samsung strongly disputes any copying. But the important point here is that what the board said was that there was no nexus. Regardless of whether or not there was alleged copying, there was no nexus between any alleged copying and the claims at issue. And if there's no nexus, then the secondary considerations are entirely irrelevant. This whole discovery dispute is entirely irrelevant and certainly does not rise to the level of a due process violation. The last point that I'll respond to that Canoe made today is that they discussed that the PTAB should not be bound by, should be bound by the examiner decision. As suggested by Judge Hsu's questions, that would require a revolution in the law, a revolution in the law that has no basis in law. There has to be some legal grounds to require it. Obviously, there's nothing in the Constitution that says the board must be bound by the patent examiner's decision. There's nothing in the statute that suggests the board should be bound by patent examiner's decision. And so this idea that due process requires it is entirely without legal basis. If the panel does not have any other questions, I'll leave it to my colleague from the Department of Justice. Mr. Salzman? Thank you, Your Honor. Thank you, Your Honor. May it please the Court, Joshua Salzman for USPTO. We've only intervened on the Arthrex II issue. I haven't heard that reference unless the panel has any questions for me. I'm happy to cede my time. Thank you, Mr. Salzman. Excellent argument. Mr. Colquhart, the last thing you said to us was that this was only decided by one board judge and the other two just rubber-stamped this decision. Do you have any good basis to say that about the board? It's an excellent question, Your Honor. So we did identify in our brief the basis for stating that. So this has to do with the fact that we have reviewed the decisions. We reviewed a whole bunch of decisions from the PTAB that were reviewed by this court and that were reversed by this court. And none of those was there any dissent. Samsung itself has been involved, as we pointed out in our blue brief. The difference doesn't make if there's a dissent or not. If they all got it wrong, they all got it wrong, and if they all got it right. I mean, we don't have very many dissents on our court either. That doesn't mean that the two of us are rubber-stamping the third judge. You know, you're hearing from a lot of law students and future lawyers an alleging bad faith on the part of a lower tribunal that exercises its job independently and faithfully is very troubling to me. I don't do that lightly, Your Honor. I'm not suggesting bad faith either. What I'm suggesting is that the process discourages dissent, and we did cite to external authority talking about how dissent is discouraged. And there's actually— What you argued, counsel, was one judge decided this and the other two rubber-stamped it. Those were your words. So you're saying these two judges have not faithfully executed their oath of office. These two judges have done nothing to evaluate the merits of this case and merely rubber-stamped it? Well, Your Honor, if it's the case, as we had pointed out in our opening brief, we're not aware of a single case in which there has been dissent at the PTAB. That's just wrong. We've all seen cases with dissents at the PTAB. The fact that there are very few doesn't mean that they're rubber-stamping it. It may mean that if they disagree, they determine that it's not worth writing a dissent. I do that all the time if I disagree with my colleagues. If I think it's a close case, they disagree with me. I'm not of the view that I need to litter the pages of that court with my writing. Other judges disagree. But the fact that there's no dissent says nothing about whether they're rubber-stamping it or not. And again, we've seen multiple cases. I think you should be very careful about making these kinds of arguments in the future that malign administrative judges like the PTAB. I appreciate that, Your Honor. And I do not mean to malign. But there's also an issue about appearances as well. We did raise this very carefully in our reply brief because it came out immediately before our reply brief was due that the judge who authored the FWDs here shortly thereafter joined a law firm that represents Samsung. And we have sought, through a Freedom of Information Act request, information about the circumstances of that. I understand that's uncomfortable for all of us to think about and talk about. But it's also not before us. That issue's not before us. That's an issue that we raised in the reply and asked the court to take judicial notice of those facts. We also asked the Patent Office to weigh in, please. You brought it up in the reply, but that issue is not properly before us. Well, that was an issue that the facts only came out at that point. I'd like to echo the comments that my colleagues have been making. And just to be clear, of course, we encourage you to see this argument, representation. But even in your arguments, given the condition of discovery, there's continuous reference to opposing counsel as being underhanded and involved in bad faith and willfully withholding things. And I just didn't see that. And I think it distracts from the argument that you do have your valid argument. These other aspersions distract them, so they don't help. And to a certain extent, they could hurt you because they're so distracted. And we encourage you as a member of the Bar to keep an eye on that as we move forward into this and maintain stability in the profession. Well, thank you for those comments, Your Honors. Okay. Time has expired. I thank all counsel. This case is taken under submission. Thank you.